IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

AARON J. JAMES                                                                                          PLAINTIFF

           v.                         Civil No. 2:21-cv-02191-PKH-MEF

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                                                                          DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Aaron J. James, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (the "Commissioner") denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

## I.     Procedural Background

Plaintiff filed his applications for benefits on November 6, 2018, alleging disability beginning September 1, 2017, due to bilateral carpal tunnel, bursitis in right knee, lumbar osteoarthritis, right rotator cuff issues, chronic back pain, and chronic knee pain. (ECF No. 11, pp. 20, 234-235, 253).  Plaintiff was 41 years old on the alleged disability date, has a limited education, and is unable to perform any past relevant work. (*Id*., p. 29). The Commissioner denied his applications initially and on reconsideration. (*Id*., p. 20).  At the Plaintiff's request, an Administrative Law Judge ("ALJ"), Thomas Cheffins, held an administrative hearing on October 7, 2020, via telephone due to the extraordinary circumstance presented by the COVID-19

pandemic. (*Id*., pp. 20, 48-84). Plaintiff was present and represented by counsel. (*Id*., pp. 20, 50). At the hearing, Plaintiff amended his alleged onset of disability to September 1, 2018. (*Id*., p. 20).

On February 18, 2021, the ALJ concluded that Plaintiff's bilateral carpal tunnel syndrome (CTS) status-post releases, left cubital tunnel syndrome, degenerative disc disease and spondylosis of the lumbar spine, cervical spondylosis with radiculopathy, thoracic stenosis, sleep apnea, obesity, brachial plexus disorder, arthritis, and right knee effusion (small) were severe, but he concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (ECF No. 11, p. 18). He found Plaintiff capable of performing light work, except he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds; can handle items frequently with the left and right hands; can occasionally work at unprotected heights and/or around moving mechanical parts; and should avoid concentrated exposure to excessive vibration. (*Id*., p. 25). With the assistance of a vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work as a small parts assembler and automatic car wash attendant. (*Id*., p. 29). Plaintiff was found not to be under a disability from his alleged onset date through the date of the ALJ's decision. (*Id*., p. 30).

The Appeals Council denied Plaintiff's request for review on September 27, 2021. (ECF No. 11, pp. 1-6). Plaintiff then filed his Complaint to initiate this action on November 24, 2021. (ECF No. 2). This matter is before the undersigned for report and recommendation. Both parties have filed appeal briefs (ECF Nos. 14, 15), and the case is ready for decision.

## II.     Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable mind would find it adequate to

support the Commissioner's decision. *Biestek Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy

given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The fact finder only considers Plaintiff's age, education, and work experience in the light of his residual functional capacity if the final stage of the analysis is reached. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. Discussion

Plaintiff raises four issues on appeal: (1) whether the ALJ fully and fairly developed the record; (2) whether the ALJ erred at Step Two; (3) whether the ALJ properly evaluated Plaintiff's subjective complaints and applied the *Polaski* factors; and (4), whether the ALJ erred in his RFC determination. After thoroughly reviewing the record, the undersigned finds that the ALJ failed to properly evaluate Plaintiff's subjective complaints, and therefore, substantial evidence does not support the Commissioner's decision to deny benefits in this case. Because this failure necessitates reversal and remand, it is not necessary for the undersigned to address Plaintiff's remaining arguments.

Plaintiff contends that the ALJ failed to properly evaluate Plaintiff's subjective statements as required under *Polaski*. (ECF No. 14, pp. 14-16). The ALJ is required to consider all the evidence relating to Plaintiff's subject complaints, including: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitation and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5), functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). In so doing, the ALJ must also consider the claimant's prior work record, observations made by third parties, and the opinions of treating and examining physicians. *Id*.

An ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them. *Id*. However, "[a]n ALJ . . . may disbelieve subjective reports

because of inherent inconsistencies or other circumstances." *Wright v. Colvin*, 789 F.3d 847, 853 (8th Cir. 2015) (citing *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) (quotation and citation omitted)). The Eighth Circuit has observed, "[o]ur touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

The evidence in this case indicates the ALJ discounted Plaintiff's subjective complaints solely because the medical evidence failed to support them. In his decision, the ALJ determined that Plaintiff's allegedly limited daily activities could not be objectively verified with any reasonable degree of certainty. However, this is not the standard by which the ALJ was required to examine Plaintiff's statements. Rather, the ALJ was required to consider the *Polaski* factors and discuss valid inconsistencies between Plaintiff's statements and the evidence of record. Here, the ALJ enumerated the factors but did not explain how those factors were presented in the record or, more importantly, how those factors discounted Plaintiff's complaints of pain. The ALJ did not explain how these findings resulted in a determination that Plaintiff was capable of less than a full range of light work.

In August 2018, Plaintiff underwent a left carpal tunnel release surgery (ECF No. 11, pp. 555-556) and sought treatment for back pain, worsening with long work hours in construction work (*Id.*, p. 442-444). As to his back pain, Plaintiff explained that he was unable to participate in physical therapy and that pain management did not help. (*Id.*, p. 442-444). A physical examination revealed normal findings, including normal range of motion, normal strength and tone, and normal stability. (*Id.*). The treating provider assessed Plaintiff with chronic midline low back pain without sciatica, referred him to physical therapy again, and prescribed tizanidine and meloxicam. (*Id.*).

Plaintiff was assessed with chronic low back pain without sciatica September 2018. (ECF 11, pp. 448-49, 493-494). He attended two visits for physical therapy, but he was discharged to self-care with goals unmet due to profound back pain such that he could not tolerate physical therapy intervention of any kind. (*Id*., p. 448). As to his left carpal tunnel release, Plaintiff reported great improvement in numbness and tingling and very little pain. (*Id*., pp. 555-556). He also reported knee pain, which the treating provider planned to assess at a follow-up appointment. (*Id*.).

Plaintiff exhibited mild depression and reported insomnia, back pain, hip pain, and knee pain in October 2018. (ECF No. 11, pp. 455-459). Plaintiff reported discomfort with his CPAP machine, and the treating provider arranged to have the machine recalibrated. (*Id*.). He also encouraged Plaintiff to seek counseling for his depression and attend pain management. (*Id*.). Plaintiff began treatment for bilateral knee pain, complaining of arthritis, carpal tunnel, and painful joints. (*Id*., pp. 570-571). The treating provider examined Plaintiff and discussed that the knee exam and x-rays did not show much to explain Plaintiff's pain. (*Id*., pp. 587-590, 750). He advised that the pain was related to the back and recommended outpatient physical therapy. (*Id.* pp. 570-571).

At his next appointment, in November 2018, Plaintiff followed up for continued lumbar and right knee pain. (ECF No. 11, pp. 566-567). The treating provider, David Koppein, NP, noted that Plaintiff appeared to be in obvious pain despite numerous tests revealing no big issues. (*Id*.). The x-rays of the back and knees revealed normal findings, and the MRI of the lumbar spine showed mild degenerative disc disease in the lumbar and thoracic spines. (*Id*.). The treating provider stated that he believed Plaintiff was in pain, though all testing revealed normal findings such that there was no concrete diagnosis to issue. (*Id*.). Plaintiff had been referred to pain

management, neurosurgery, and orthopedics. He was noticeably limping and exhibited pain with palpation around the right patella and pain with both open and closed drawer tests. (*Id.*).

NP Koppein also completed a short form medical source statement assessing Plaintiff capable of less than sedentary work (lifting less than 10 pounds or standing/walking less than 2 hours in an 8-hour workday). (ECF No. 11, p. 594). Plaintiff was unable to sit for 6 hours; unable to sit/stand/walk in combination for 8 hours; required 4 or more unscheduled work breaks; had significant limitations reaching/pushing/pulling bilaterally in the upper extremities; and had significant limitations in handling and working with small objects with both hands. (*Id.*).

Another examination showed that Plaintiff moved with extreme slowness and guarding. (ECF No. 11, pp. 598-599). The treating provider, Brent Walker, M.D., noted that virtually all movements created severe back pain. Plaintiff was tender to palpation over his right gluteal bursae and over his left paraspinous muscles in his upper lumbar region. He had a positive straight leg raise test at 30 degrees bilaterally. Forward flexion bothered him at 90 degrees, and he resisted facet lateral loading and extension. Plaintiff was given a facet steroid injection at L4-L5, L5-S1 and a right gluteal bursa injection. (*Id.*). Plaintiff underwent outpatient surgery for right carpal tunnel release in November 2018. (*Id.*, p. 725).

In December 2018, Plaintiff reported that injections from neurosurgery and medications from pain management failed to alleviate his pain at best and exacerbated it at worst. (ECF No. 11, pp. 630-631). He complained of off-the-scale pain (13/10) in the mornings and 7/10 levels of pain during the rest of the day. Chiropractor treatment reportedly did not help the pain, and he explained that he had difficulty moving from sitting to standing. (*Id.*). NP Koppein also noted that they had tried numerous muscle relaxers that had failed; they planned to try Valium next. (*Id.*).

7

Plaintiff continued to seek treatment for back pain in January 2019. (ECF No. 11, pp. 627). While NP Koppein's advice was to continue pain management, Plaintiff reported that injections only worsened his symptoms. NP Koppein reiterated that he was still unclear as to what was causing Plaintiff's pain. Additionally, Plaintiff reported returning pain in bilateral hands and wrists despite bilateral carpal tunnel releases. On exam, Plaintiff exhibited a slow gait and decreased strength and mobility due to pain. It was noted that Plaintiff grimaced with movement in any direction, and he exhibited pain with palpation in his bilateral hands and wrists. (*Id*.). An MRI of the right knee showed a small joint effusion but no evidence of internal derangement. (*Id*., p. 743).

In February 2019, Dr. Walker assessed Plaintiff for physical therapy and found definite aversion to movement and hyper-pain response to transitional movement, bending, and climbing simulated movements. (ECF No. 11, p. 669). Dr. Walker noted that Plaintiff "is very pain focused and has limited ability at present to achieve full buy-in to therapy intervention and to active recovery." It was noted that Plaintiff's progress would be slow. (*Id*.). Progress notes in March 2019 revealed that Plaintiff was very guarded and did not want to participate in physical therapy. (*Id*., p. 667). He reported pain with every movement and stated that nothing alleviated it. (*Id*.). NP Koppein noted in April 2019 that there was very little he could do for Plaintiff's back pain at this point as he had been to neurosurgery and pain management without clear results. (*Id*., p. 843).

Plaintiff sought treatment from Robert Rennert, M.D., neurosurgery resident, and Noojan Kazemi, M.D., neurosurgery professor, for lower back pain June 2019. (ECF No. 11, p. 676). On exam, Plaintiff demonstrated 5/5 strength throughout and intact sensation. He was scheduled for an MRI, which ultimately revealed a normal lumbar spine. (*Id*., p. 740). He also reported subjective hand weakness following carpal tunnel releases. (*Id*., p. 676). He noticed that driving a car made his hands go numb, and he complained of increased symptoms at night. (*Id*., p. 681).

While he had a history of doing repetitive activities with his hands, he reported that he had not worked in more than a year due to low back problems. Nerve conduction and electromyographic studies showed no evidence to suggest peripheral nerve entrapment and no evidence to suggest peripheral neuropathy, cervical radiculopathy, or any other neuromuscular disease. (*Id*.).

In August 2019, Plaintiff continued to complain of bilateral hand and wrist pain, numbness, tingling, and weakness. (ECF No. 11, p. 708). On exam, he demonstrated the ability to make a fist, but had a positive Tinel's sign, Phalen's sign, and Durkin's compressions. Thumb x-rays revealed mild changes at the CMC joints. The treating provider, Carl L. Cordell, M.D., noted that EMG nerve conduction tests typically do not return to normal and there was no evidence of acute compression. Plaintiff elected to proceed with injections and agreed to wear braces at night. (*Id*.).

Plaintiff continued to demonstrate a slow but steady gait in October 2019. (ECF No. 11, p. 861). The following month, Plaintiff stated that pain medication did not work for him. (*Id*., p. 829). He was advised to try ice and heat therapy and was scheduled for rheumatology testing. (*Id*.).

In December 2019, Plaintiff continued treatment for bilateral carpal tunnel syndrome and back pain. (ECF No. 11, pp. 825-827). The physical exam showed pain with movement of the wrist in any direction and lumbar pain in any direction. NP Koppein advised that Plaintiff needed to be seen by occupational therapy at this point. He also referred Plaintiff to neurology and began a trial of Celebrex as anti-inflammatories had failed so far. (*Id*.).

Plaintiff presented for occupational therapy with Dr. Forrest in January 2020 to address significant decline in functional performance, especially carrying, moving, and handling objects. (ECF No. 11, p. 714). He reported decreased range of motion and strength of bilateral upper extremities and bilateral carpal tunnel syndrome. Despite undergoing carpal tunnel release

9

operations and bilateral wrist injections, Plaintiff reported no significant improvement in 8/10 level pain in his hands and wrists. The treatment provider noted that Plaintiff demonstrated significantly limited change since his last occupational therapy evaluation in May 2019 (for hands) (*Id*., pp. 719-720) and in February 2019 (for back) (*Id*., pp. 723-724), with reportedly no improvement with participation in prior therapy services. Patient's case was to be held until a neurosurgeon follow-up, and it was noted that Plaintiff had poor rehab potential. (*Id*., p. 718). A nerve conduction test revealed mild diffuse sensory neuropathy of all extremities but an unremarkable EMG of all extremities. (*Id*., p. 786).

In February 2020, Plaintiff continued treatment for rheumatoid arthritis and osteoarthritis. (ECF No. 11, p. 925). A cervical spine MRI revealed mild degenerative changes at the C5-6 level with tiny central protrusion without significant central or foraminal narrowing. (*Id*., pp. 780-782). A lumbar MRI showed mild degenerative disc disease at L3-4 with slight end plate spurring noted and mild degenerative facet changes. (*Id*.). Imaging results of bilateral shoulders were notable for mild AC joint sclerosis consistent with early osteoarthritis, putting him at risk for impingement. (*Id*., p. 930). An ultrasound of bilateral hands and wrists showed considerable synovial hypertrophy in the left wrist. The treating provider noted that Plaintiff may have an inflammatory process as the synovial thickening was so significant despite lack of power Doppler signal. (*Id*., p. 961).

In June 2020, Plaintiff followed up with a neurologist, Steve-Felix Belinga, M.D., for nerve pain. (ECF No. 11, p. 774). He reported no change since his last visits in February 2020 and April 2020. (*Id*., pp. 777, 783). He explained that he was currently taking his medications as prescribed, but the pain and swelling in his wrists had been the same. The treating provider noted weakness as he was limited by pain, but he was also weak in the right upper extremity. He also demonstrated

some tenderness to palpation in the left elbow. While the cervical and lumbar spine revealed only mild changes that did not require surgery, the treating provider noted that Plaintiff's pattern of weakness was tied to pain. It was noted that physical therapy, nerve blocks, and pain clinics did not help Plaintiff. He was given gabapentin as he was already prescribed medical marijuana. (*Id*.).

Bilateral hand x-rays in June 2020 were consistent with osteoarthritis, but no acute findings for inflammatory arthritis were evident. (ECF No. 11, p. 943). The next month, an ultrasound of bilateral foot and ankles showed spurring at the insertion of the Achilles tendons. (*Id*., pp. 941-942). X-rays of bilateral feet consistent with 1st MTP sclerosis scatter IP joint sclerosis and Achilles insertional along with plantar calcanea spurs bilaterally. No acute findings for inflammatory arthritis were present; however, his heel spurs were suggestive of seronegative spondyloarthropathy. (*Id*.). Plaintiff demonstrated a stiff, slow gait due to back pain upon examination in August 2020. (*Id*., p. 821).

In October 2020, Plaintiff presented for treatment with Russell Branum, M.D., for rheumatoid arthritis. (ECF No. 11, p. 883). He reported severe pain, rating it at 10/10, in his neck, bilateral low back, bilateral wrists, right hand, right knee, bilateral ankle and bilateral multiple joints. He also endorsed fatigue and pain in various finger joints. He stated that he took his medications as prescribed. Dr. Branum noted that Plaintiff had fallen down a flight of stairs two days before. On examination, Plaintiff demonstrated a tender cervical spine with severe pain with motion. He also had a tender lumbar spine with severe pain on motion. He had tenderness and severe pain with motion of bilateral shoulders. He had tenderness and moderate pain with motion of bilateral wrists. His hands exhibited mild RA changes and pain with motion. He had bilateral hip tenderness and pain with motion. He had tenderness of the left knee and pain with motion, and tenderness of the right knee with severe pain with motion. He was assessed with rheumatoid

arthritis without rheumatoid factor at multiple sites. He was prescribed Azulfidine and methotrexate and a Medrol Dosepak. Imaging of the pelvis and lumbar spine showed mild lateral spurring at the right hip and mild narrowing of the intervertebral disc space L5-S1, likely reflecting degenerative disc disease. (*Id*., p. 933).

While there is some evidence of noncompliance with treatment, it appears that Plaintiff declined certain treatment modalities because they exacerbated his symptoms. The record repeatedly notes that Plaintiff could not tolerate additional physical therapy due to his level of pain. Pain management injections worsened his symptoms. Plaintiff consistently described severe pain between 8/10 and "13/10." He reported pain in his hands and wrists despite bilateral carpal tunnel releases, and he reported constant, severe back pain. While testing remained mild, treatment providers acknowledged that Plaintiff experienced significant pain and physical exams confirmed as much. Treating providers could not determine the cause of Plaintiff's alleged pain as objective testing did not provide a cause.

The greater narrative of the ALJ's decision fails to indicate that he considered the *Polaski* factors. The ALJ does not point to inconsistencies between Plaintiff's alleged complaints of pain and his reported functionality. The ALJ noted Plaintiff's arrival at one appointment "in his work clothes," but he does not explain what those "work clothes" were or how that discounted Plaintiff's alleged pain. The record indicates, however, that Plaintiff stopped performing work as a contractor due to pain and moved to supervisory tasks before ultimately stopping work altogether. The ALJ noted that Plaintiff could prepare simple meals, pay bills, and drive to support an analysis of Plaintiff's ability to understand, remember, or apply information. He pointed to Plaintiff going out of state with family for two vacations in an analysis of Plaintiff's ability to engage in social activities. Plaintiff could watch TV and manage funds, which the ALJ noted in regard to the ability

concentrate, persist, or maintain pace. Plaintiff had appropriate grooming and hygiene, which the ALJ considered as to Plaintiff's ability to adapt or manage himself.

While the ALJ pointed to generally mild objective findings, he does not indicate how said findings discounted Plaintiff's experience of pain when treatment providers acknowledged Plaintiff's pain despite their inability to determine its cause. Plaintiff remained consistent in his complaints of pain to his treatment providers, repeatedly explaining that injections, physical therapy, and medications failed to relieve his symptoms. Treatment providers observed that Plaintiff could not tolerate physical therapy due to the pain he experienced with every movement such that physical therapy would not benefit him. The record indicates that conservative measures, including carpal tunnel release surgeries, had failed to resolve Plaintiff's pain. Had the ALJ provided a discussion about how he evaluated Plaintiff's statements and how they were inconsistent with the record, we would be better equipped to assess whether the ALJ properly considered Plaintiff's subjective complaints under *Polaski*. However, the narrative provided by the ALJ in his decision does not provide enough basis to show that he did so. Instead, it appears that the ALJ relied primarily on the fact that the medical evidence did not fully support Plaintiff's subjective statements.

Accordingly, the ALJ's decision is not supported by substantial evidence, and the case should be reversed and remanded for further consideration.

### IV. Conclusion

Based on the foregoing analysis, it is recommended that this case be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely**

13

**objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 30th day of January 2023.

/s/ Mark E. Ford
HON. MARK E. FORD
CHIEF UNITED STATES MAGISTRATE JUDGE